UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GENE ZARITSKY,  )
        Plaintiff,  )  3:07-cv-00006-JCM-VPC
)
    v.  )  **REPORT AND RECOMMENDATION**
)  **OF U.S. MAGISTRATE JUDGE**
JACKIE CRAWFORD, *et al.*,  )
        Defendants.  )  June 11, 2010
_____)

Before the court are plaintiff's motion for summary judgment (#107) and defendants' motion for summary judgment (#113). Defendants opposed (#116), and plaintiff replied (#118). Plaintiff opposed (#117), and defendants did not reply. The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#113) be granted and plaintiff's motion for summary judgment (#107) be denied.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Gene Zaritsky ("plaintiff"), acting *in pro se*, is currently a prisoner at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#108). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983 and state law, alleging that prison officials violated his constitutional rights while incarcerated at Lovelock Correctional Center ("LCC") (#94). On March 20, 2009, plaintiff filed an amended complaint in which he named the following defendants: State of Nevada, Nevada Department of Corrections, Jackie Crawford, (former) NDOC Director; Lenard Varé, (former) LCC Warden; Greg Cox, NDOC Associate Director of Operations; Valaree Olivas, LCC correctional officer; Joyce Thomson, LCC caseworker. *Id*.

Plaintiff claims that on February 13, 2004, inmate James Dirocco held a "shank" to plaintiff's neck and threatened to kill plaintiff over a debt (#94). Plaintiff then told prison officials, specifically

1    defendant Olivas, of threats received from inmate Dirocco (#23, pp. 2-3).¹ Defendant Olivas
2    allegedly told plaintiff that she "would take care of the situation." *Id.*; #113 p. 7. Defendant Olivas
3    advised correctional officer Brian Suwinski to "check out" the incident because plaintiff had
4    "apparently stated that inmate Dirocko [sic] #43371 had placed a shank to his neck" (#36, p. 6; #117,
5    p. 18). Apart from correctional officer Suwinski's report, prison officials made no formal indication
6    that inmate Dirocco posed a threat to plaintiff's safety. After the incident, plaintiff and inmate
7    Dirocco lived in the same unit until April 2004 (#36-1, p. 3; #39-1, p. 2). During this period,
8    plaintiff claims that he was subjected to numerous threats and harassment but did not report them
9    (#117, p.4).

10   Plaintiff claims that he told prison officials, including defendant Thomson, that he should not
11   be housed in the same unit as inmate Dirocco. Nevertheless, on February 2, 2005, prison officials
12   placed plaintiff and inmate Dirocco in the same unit. Plaintiff describes how he was "beaten and
13   forcibly sexually assaulted" (#94, p. 3). Plaintiff told prison officials that "while his back was to the
14   cell door he felt something being draped over his head," and that "one of the attackers [was]
15   fumbling with a plastic bag that they used as a condom and that he was entered with an unknown
16   object through his rectum" (#36-1, p. 9). A "short time later," plaintiff "woke up . . . and used toilet
17   paper to clean himself up." *Id.* That day, prison officials admitted plaintiff to the LCC Infirmary,
18   due to an apparent "anxiety attack."

19   Three days later, on February 5, 2005, plaintiff reported the incident of sexual assault to a
20   nurse in the infirmary (#36, Ex. C). Medical personnel then evaluated plaintiff and noted "the
21   appearance of anal fissures" (#117, Ex. D). Led by defendant John Leonhardt, prison officials

---

¹ Initially, prison officials denied any such notice, claiming that searches of prison records revealed no reports of any such incident (#8, p. 9). Prison officials attested that such an allegation of a "shank" in an inmate-on-inmate assault would result in written documentation in "several different locations." *Id.* Ex. B. However, on September 14, 2007, defendants "unearthed" a "general incident report" from correctional officer Suwinski which substantiated plaintiff's claims that inmate Dirocco had threatened him with a makeshift weapon. *See* #36, Ex. B. On those grounds, defendants then withdrew their motion to dismiss (#8), and the court granted their request (#s 23, 27).

commenced an investigation of the incident (#36, Ex. C).[2]  They sent plaintiff's clothing as well as saliva samples from plaintiff and inmate Dirocco to a forensics laboratory.  *Id.* Ex. D.  Forensic scientists did not discover any hair on the clothing or any evidence containing DNA.  *Id.*; #8, Ex. A-2.  After his investigation, correctional officer Leonhardt brought charges against plaintiff for filing a false report; however, the charges were subsequently dismissed.  *Id.* Ex. C; #8, Ex. A-3.

The court notes that the plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.  Discussion**

**1.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

---

[2]  Correctional officer John Leonhardt is not named as a defendant in this case (#94), nor does the docket indicate that has be been served with a complaint.

1  The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.     Analysis**

Plaintiff alleges four counts of constitutional and state law violations. The court addresses each in turn below.

    **1.     Count I: Eighth Amendment Failure to Protect**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." *Id.* at 834. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. *Id.* at 834; *see Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Thus, there is both an objective and subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 989, 904 (9th Cir. 2002).

The objective standard requires that "the deprivation alleged must be 'sufficiently serious.'" *Id.* at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "What is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* at 8.

The subjective standard of deliberate indifference requires "more than ordinary lack of due

4

care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id*. at 836. Mere negligence on the part of prison staff is not sufficient to prove deliberate indifference. *Id*. Essentially, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.*

To prove deliberate indifference, the plaintiff must show that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The plaintiff need not prove that the official believed the harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Whether a prison official had the requisite state of mind is a question of fact, "subject to demonstration in usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. An official will not escape liability if he has "refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id*. at 843, n.8. Conversely, prison officials may show that they are not liable because they did not know "the underlying facts indicating a sufficiently substantial danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. A court should not rely solely on the fact that a prisoner failed to notify prison officials of a risk of harm, but instead should look to whether the prisoner has established the prison official's awareness through other relevant evidence. *Id*. at 848 (explaining that "the failure to give advance notice is not dispositive").

In this case, plaintiff alleges that defendants Olivas, Thomson, Varé, Cox, and Crawford are liable for the failure to provide adequate safety (#94). The court addresses the circumstances as related to each defendant.

1                     **a.**        **Defendant Olivas**

2     As discussed above, to prove his claim, plaintiff must demonstrate (1) that defendant Olivas

3 knew of a substantial risk of serious harm, and (2) that she disregarded such a risk. *See Farmer*, 511

4 U.S. at 837.

5     With respect to knowledge of the risk, defendant Olivas first admits that plaintiff reported

6 the threats (#113 p. 7). Then, she provides in the instant motion that she "*seems to have had*

7 *knowledge* of [plaintiff's] accusation, as Suwinski's report included that she had asked him to

8 investigate the incident." *Id.* (emphasis added). As to whether the risk was substantial, the record

9 also contains evidence to that effect. *See* #8, Ex. B ("If correctional officers received an inmate

10 report of a shank . . . it is assumed that this report would be taken very seriously . . ."); #8, Ex. A-4

11 (report of defendant Thomson noting that defendant Olivas would "not have taken this report

12 lightly").

13     With respect to the second element of what plaintiff must prove, defendant Olivas argues that

14 she did not disregard the threat because she investigated the incident (#113, p. 7). Indeed, the

15 evidence reveals that defendant Olivas "advised" correctional officer Suwinski to investigate the

16 incident and create a report. However, the associate warden of operations at LCC attested that "[a]t

17 a minimum, an incident of this nature would be noted in the unit log and an incident report would

18 be made." *Id.* Ex. B. The facts certainly suggest that defendant Olivas failed to note any such

19 incident in the unit log. *See* #8, Exs. A-4, A-5 (responses to plaintiff's grievances). Regarding the

20 failure to note the February 2004 incident, defendant Olivas argues that "the most reasonable

21 inference to draw from that allegation is that she did not believe there was a serious threat." (#113,

22 p. 8). However, the facts are equally susceptible to the inference that defendant Olivas disregarded

23 such a risk as a means of possibly inflicting punishment. Thus, a triable issue exists as to

24 whether defendant Olivas deemed the risk insubstantial or whether she disregarded the risk in an

25 attempt to punish plaintiff.[3]

26 _____

27     [3]     At this point, the court must make one distinction clear. Plaintiff does not present any
evidence that defendant Olivas played any role in housing the two inmates in the same unit in February 2005.
28 Nor does plaintiff provide any evidence, apart from his own allegations, to demonstrate that he notified

1    Defendant Olivas advances another basis on which she argues that any threat was
2 insubstantial or nonexistent (#113, p. 7). She notes that plaintiff lived in the same unit as inmate
3 Dirocco until April 2004, during which plaintiff did not file grievances indicating that he was in any
4 fear. However, the failure of plaintiff to apprise defendants of a threat does not absolve the
5 defendants of liability. *See Farmer*, 511 U.S. at 842 (noting that failure to give notice is not
6 dispositive). The question here is not the plaintiff's state of mind; the focus is on the state of mind
7 of the defendant. That plaintiff was not attacked immediately after inmate Dirocco's February 2004
8 threat was fortuitous, but it does not change the circumstances of the issues here – whether defendant
9 Olivas knew of and disregarded a risk of substantial harm when she failed to make any note of it in
10 any prison records. In addition, defendants do not produce one shred of evidence to demonstrate that
11 defendant Olivas believed the threat to be insubstantial. For example, a simple note in the prison's
12 records that plaintiff's accusation was not credible or baseless would evidence that she believed the
13 threat to be minimal.
14    In sum, a triable issue remains as to whether defendant Olivas was deliberately indifferent
15 to plaintiff's safety when she failed to note in prison records the existence of the threat to plaintiff.
16 However, the court grants qualified immunity as discussed below. *See* Part II.B.5.

17            **b.    Defendant Thomson**

18    With respect to defendant Thomson, defendants argue that no evidence exists to demonstrate
19 that plaintiff gave notice of threats made against him. Plaintiff claims that he told defendant

---

21 defendants of the potential of harm in this housing assignment. The issue is not whether defendant Olivas violated plaintiff's Eighth Amendment rights in placing the two men on the same unit because there is no evidence that defendant Olivas did so. The issue is defendant Olivas's alleged disregard of the risk to plaintiff after notice of the February 2004 incident. Even ten months later, the question remains whether defendant Olivas's alleged disregard in February 2004 was the cause of plaintiff's constitutional injury in February 2005.

    Although defendant Olivas did not personally participate in the housing of the two inmates, her failure to note the threat posed to plaintiff may incur liability. The question is whether she set into motion a series of events that she should have reasonably known would inflict injury. *See Johnson v. Duffy*, 588 F.2d 740, 744-45 (9th Cir. 1978) ("The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.").

7

1  Thomson of the threat posed by inmate Dirocco (#94, p. 4). Although plaintiff's failure to give
2  notice is not dispositive, no evidence apart from plaintiff's mere allegations exists to demonstrate
3  that defendant Thomson had knowledge of the threats. *See Gasaway v. Northwestern Mut. Life Ins.*
4  *Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (noting that "mere allegations and denials" are insufficient to
5  overcome the moving party's showing of entitlement of judgment as a matter of law). Because
6  plaintiff does not provide any factual issues with respect to defendant Thomson's knowledge of the
7  threats to plaintiff's safety, the court grants summary judgment to defendant Thomson.

        **c.**        **Defendants Cox, Crawford, and Varé**

9  Defendants Cox, Crawford, and Varé argue that plaintiff has failed to demonstrate a level of
10 participation that would render them liable under section 1983 (#113). In his opposition to
11 defendant's motion for summary judgment, plaintiff argues that defendants Cox and Crawford are
12 liable because they created the administrative regulations that prison officials failed to follow (#117).
13 Plaintiff does not address any issues with respect to defendant Varé.
14 "A person subjects another to the deprivation of a constitutional right, within the meaning
15 of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform
16 an act which he is legally required to do that causes the deprivation of which the complaint is made."
17 *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In addition, liability may not be imposed on
18 supervisory personnel for the actions of their employees under a theory of respondeat superior. *See*
19 *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th
20 Cir. 1989). When the named defendant holds a supervisorial position, the causal link between the
21 defendant and the claimed constitutional violation must be established. In other words, to maintain
22 his claim against defendants, "the plaintiff must set forth some evidence that the defendant[s] either:
23 personally participated in the alleged deprivation of constitutional rights; knew of the violations and
24 failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy
25 itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."
26 *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotations omitted).
27 Here, the court is unclear how or why plaintiff includes these defendants. Plaintiff alleges
28 in his complaint that defendants "acted in concert" to deprive him of his rights, but he provides no

8

1  evidence to that effect (#94, p. 4).  In opposition to the defendants' motion for summary judgment,
2  he argues that the defendants created the administrative regulations and failed to train prison officials
3  in proper application of those administrative regulations.  Plaintiff demonstrates that defendant
4  Olivas failed to follow standard practices, but he fails to present any facts to support the assertion
5  that defendants personally participated or were aware of defendant Olivas's shortcomings.  Neither
6  does plaintiff produce any evidence that the policy was deficient.  Quite the opposite, plaintiff
7  appears to argue that the policy itself was sufficient but simply not followed with respect to his
8  incident.  In short, he has not demonstrated: (1) that any of these defendants personally participated
9  in any deprivation of his constitutional rights, (2) that any of these defendants knew of any threats
10 posed to plaintiff's safety and failed to prevent them, or (3) that any of these defendants promulgated
11 any policy that caused the threat to inmates safety.  Therefore, the court grants summary judgment
12 to these defendants on plaintiff's Eighth Amendment claim.

### 2. Count II: Retaliation

Plaintiff alleges that correctional officer Leonhardt retaliated against him by charging plaintiff with filing a false report.  As mentioned above, correctional officer Leonhardt is not mentioned in the operative pleadings and has not been served.  Since plaintiff's claim for retaliation does not involve any of the named defendants, summary judgment is granted on the claims in count II.

### 3. Count III: Negligence

Plaintiff alleges that defendants were negligent under state law in failing to protect him from the alleged attack by inmate Dirocco.

In Nevada, in order to proceed on a negligence claim, a plaintiff generally must allege that: (1) the defendant had a duty to exercise due care towards the plaintiff; (2) the defendant breached the duty; (3) the breach was an actual cause of the plaintiff's injury; (4) the breach was the proximate cause of the injury; and (5) the plaintiff suffered damage.  *Perez v. Las Vegas Medical Center*, 107 Nev. 1, 4, 805 P.2d 589, 590-591(1991).  In the context of present situation, "prison officials have a specific duty to protect inmates only when they actually know of or have reason to anticipate a specific impending attack." *Butler ex. rel. Biller v. Bayer*, 123 Nev. 450, 168 P.3d 1055 (Nev.

1  2007).

2  Here, plaintiff does not present any evidence to demonstrate that defendants had knowledge
3  of an "impending" attack. Although the evidence exists that defendant Olivas had knowledge of the
4  possibility of an attack, the court does not find that such knowledge could constitute knowledge of
5  an "impending" attack. Thus, plaintiff has failed to meet his burden of producing evidence that
6  defendants had any duty under state tort law to protect him from the alleged attack of inmate
7  Dirocco.

8  **4.    Count IV: Eighth Amendment, Negligent Infliction of Emotional Distress**

9  Plaintiff alleges that defendants' negligence resulted in his emotional distress in violation of
10 the constitution and state law.

11 The Eighth Amendment does not provide for a prisoner's claim for negligent infliction of
12 emotional distress. The PLRA requires a showing of physical injury for claims of mental and
13 emotional injury. Damages for emotional distress may remain part of an Eighth Amendment claim
14 only where a plaintiff has proven physical injury. *See Oliver v. Keller*, 289 F.3d 623, 629 (9th Cir.
15 2002). As plaintiff fails to demonstrate an underlying constitutional injury, as discussed above and
16 below, summary judgment is proper on this claim.

17 With respect to any state law claim for emotional distress, state law requires that a claim for
18 negligent infliction of emotional distress have an underlying claim for negligence. *Turner v.*
19 *Mandalay Sports Entertainment LLC*, 180 P.3d 1172, 1178 (Nev. 2008). Since plaintiff has failed
20 to formulate a negligence claim under Nevada law, summary judgment is proper on this claim.

21 **5.    Qualified Immunity**

22 As discussed above, a triable issue remains as to whether defendant Olivas was deliberately
23 indifferent to plaintiff's safety when she failed to note in prison records that inmate Dirocco may
24 have posed a threat toward plaintiff. Now, the court turns to the issue of qualified immunity.

25 "The doctrine of qualified immunity protects government officials from liability for civil
26 damages insofar as their conduct does not violate clearly established statutory or constitutional rights
27 of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d
28 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

1  L.Ed.2d 396 (1982). "In considering a claim of qualified immunity, the court must determine
2  'whether the facts that plaintiff has alleged . . . make out a violation of a constitutional right,' and
3  'whether the right at issue was clearly established at the time of the defendant's alleged
4  misconduct.'" *Id.* (quoting *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815, (2009)). Whether
5  a right is clearly established turns on the "objective legal reasonableness of the action, assessed in
6  light of the legal rules that were clearly established at the time it was taken." *Id.* "[A]ll but the
7  plainly incompetent or those who knowingly violate the law have immunity from suit; officers can
8  have a reasonable, but mistaken, belief about the facts or about what the law requires in any given
9  situation." *Id.*

10  In this case, the court must inquire as to whether "the law governing [defendant Olivas's]
11  conduct was clearly established" and whether "a reasonable state official [could] have believed
12  [defendant Olivas's] conduct was lawful." *Id.* (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d
13  1043, 1050 (9th Cir. 2002)). The general law regarding inmate safety was clearly established at the
14  time of the incident in that prison officials cannot deliberately disregard a substantial risk of serious
15  harm to an inmate. *See, generally, Farmer v. Brennan*, 511 U.S. 825 (1994).

16  Specifically, however, the state of the law must be viewed "in light of the specific context
17  of the case, not as a broad proposition." *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The problem
18  here is that "neither *Farmer* nor subsequent authorities has fleshed out 'at what point a risk of inmate
19  assault becomes sufficiently substantial for Eighth Amendment purposes.'" *Estate of Ford*, 301 F.3d
20  at 1051 (quoting *Farmer*, 511 U.S. at 834 n.3). In *Estate of Ford*, the family and estate of a state
21  inmate who was killed by his cellmate sued prison officials responsible for the double-celling of the
22  two inmates. *Id.* at 1045. The inmate who attacked the plaintiff was a known threat to inmates,
23  identified as a "predator," and labeled as the highest-level security risk. *Id.* at 1051. He had even
24  stabbed another inmate seventeen times and attempted to attack other cellmates. *Id.* On appeal, the
25  issue was whether the district court improperly denied qualified immunity to the defendant
26  responsible for labeling the inmate as acceptable for double-celling. Although the court noted that
27  the defendant prison official's awareness of the above facts, the court noted that defendant was also
28  aware that the attacking inmate was back on his medication and had, on occasion, successfully

11

1   double-celled with other inmates. *Id.* Ultimately, the court held that it was not clear to a reasonable
2   official, in light of all the facts, when the risk of harm "change[d] from being *a* risk of *some* harm
3   to a *substantial* risk of *serious* harm." *Id.* "The information available to them did not make it so
4   clear that [the attacking inmate] would harm [the plaintiff] that no reasonable officer could have
5   agreed to allow them to be celled together." *Id.* at 1045.

6   Here, defendant Olivas argues that she "reasonably concluded that Dirocco was not a threat
7   to [plaintiff] based on [plaintiff's] one accusation and officer Suwinski's report" (#113, p. 10)   To
8   the extent that defendant Olivas asserts that her actions were objectively reasonable, the court agrees.
9   Given all the facts known to defendant Olivas, it was not so clear that her acts violated clearly
10  established federal law.  As in *Estate of Ford*, it would not be clear to defendant Olivas when the
11  threat to plaintiff went from a risk of some harm to a substantial risk of serious harm.

12  The court certainly has sympathy for the plaintiff's serious injuries and acknowledges that
13  "being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for
14  their offenses against society.'" *See Farmer*, 511 U.S. at 834, *citing Rhodes v. Chapman*, 452 U.S.
15  337, 347 (1981). From the evidence before the court, defendant Olivas likely committed an error in
16  failing to note of the threat to plaintiff after reviewing correctional officer Suwinski's report.
17  However, "failure to follow prison procedures [may] certainly [be] negligent; but negligence, or
18  failure to avoid a significant risk that should be perceived but wasn't 'cannot be condemned as the
19  infliction of punishment.'" *Estate of Ford*, 301 F.3d at 1052 (quoting *Farmer*, 511 U.S. at 838).
20  Defendant Olivas did not follow prison procedures and may be subject to disciplinary action.
21  However, the court cannot find that her failure to record an accusation of a threat from inmate
22  Dirocco to plaintiff violated of any clearly established federal law.

23  Therefore, the court grants qualified immunity to defendant Olivas.[4]

24                                  **III. CONCLUSION**

25  Based on the foregoing and for good cause appearing, the court grants defendant Olivas

---

28  [4]   Because the court finds that no issues of fact exist as to the liability of other defendants, the court need not address qualified immunity issues.

1  qualified immunity with respect to plaintiff's alleged constitutional injury. With respect to all other
2  defendants, plaintiff fails to demonstrate any issues of material fact. In addition, plaintiff has not
3  demonstrated any factual issues with respect to his claims of retaliation, negligence, or negligent
4  infliction of emotional distress.

   As such, the court recommends that defendants' motion for summary judgment (#113) be
6  **GRANTED** and that plaintiff's motion for summary judgment (#107) be **DENIED**.

## IV.  RECOMMENDATION

8  The court respectfully recommends that defendants' motion for summary judgment (#113)
9  be **GRANTED** and that plaintiff's motion for summary judgment (#107) be **DENIED.**

10  The parties are advised:

11  1.   Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,
12  the parties may file specific written objections to this report and recommendation within fourteen
13  days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and
14  Recommendation" and should be accompanied by points and authorities for consideration by the
15  District Court.

16  2.   This report and recommendation is not an appealable order and any notice of appeal
17  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

18  **DATED:** June 11, 2010.

*/s/ Valerie P. Cooke*

**UNITED STATES MAGISTRATE JUDGE**